**FILED**

**NOVEMBER 27, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**07 C 6674**

| | |
|---|---|
| SUNDANCE REHABILITATION CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ **JUDGE LINDBERG** |
| vs. ) | **MAGISTRATE JUDGE COLE** |
| ) | Hon. Judge _____ |
| PROVENA HEALTH, ) | |
| PROVENA HEALTH SERVICES, INC., ) | |
| and PROVENA SENIOR SERVICES, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

NOW COMES Plaintiff SunDance Rehabilitation Corporation ("SunDance"), by its attorneys, and for its complaint against Defendants Provena Health, Provena Health Services, Inc., and Provena Senior Services (collectively "Provena"), alleges as follows:

### THE PARTIES

1.    SunDance is a Connecticut corporation doing business in the state of Illinois. Its principal place of business is at 200 Northpointe Circle, Suite 302, Seven Fields, Pennsylvania 16046.

2.    SunDance provides contract therapy services to skilled nursing facilities, assisted living communities, continuing care retirement communities, hospitals, and outpatient rehabilitation settings. Therapists employed by SunDance are assigned to provide therapy services to patients of SunDance's customers.

3.    Provena Health is an Illinois corporation, with its principal place of business at 19065 Hickory Creek Drive, Mokena, Illinois 60448.

4.     Provena Senior Services is an Illinois corporation, with its principal place of business at 19065 Hickory Creek Drive, Mokena, Illinois 60448.

5.     On information and belief, Provena Health Services, Inc. is or was an Illinois corporation doing business in the state of Illinois, including Will County, Illinois, and is or was located at 200 East Court Street, Kankakee, Illinois 60901. Provena Health Services, Inc. is also known as Provena Senior Services.

6.     Provena Health owns, and/or controls, and/or is the successor to, Provena Health Services, Inc.

7.     Provena Health owns and/or controls Provena Senior Services.

8.     Provena operates long-term care and senior residential facilities in Illinois and Indiana. Provena offers physical therapy services to its facilities' residents by contracting with third-party providers of therapy services.

## DIVERSITY JURISDICTION

9.     There is diversity of citizenship between SunDance and all defendants.

10.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

## THE FACTS

### The Contract Between The Parties

11.     SunDance and Provena entered into a Therapy Services Agreement effective January 1, 2002 (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.

12.     Provena and SunDance entered into the Agreement knowingly and voluntarily.

13.     The Agreement called for SunDance to provide therapy services to the ten facilities identified on Exhibit B attached to the Agreement.

14.    Effective May 31, 2007, one facility, Provena Villa Fransciscan, was dropped from the Agreement.  That left nine facilities encompassed by the Agreement.

15.    Article 6.1 of the Agreement provided that it was for renewable, one-year terms. However, under Article 6.2, the Agreement could be terminated by either party upon 30 days' written notice to the other.

16.    In the event of termination of the Agreement, Article 6.3 expressly declares that certain provisions of the Agreement—including Articles 7.1 and 9—survive termination of the Agreement.

17.    Article 7.1 of the Agreement provides, in part:  "Each party shall use its best efforts to preserve the confidentiality of all confidential and/or proprietary information disclosed to the other party in connection with this Agreement . . . ."

18.    Article 9 of the Agreement provides:

> SUNDANCE EMPLOYEES.  During the term of this Agreement and for one (1) year following termination, [Provena] shall not, directly or indirectly (*e.g.*, by hiring or using another individual or entity that hires SunDance's employees or contractors, . . . ), employ or contract with (i) any SunDance employee, agent or representative who provided, managed or otherwise was involved in the provision of Services at the Facility within the previous one (1) year . . . .[Provena] shall not induce any SunDance employee, agent or representative to terminate his/her relationship with SunDance.  The parties acknowledge that the restrictions set forth in this Article 9 are reasonable in scope and essential to SunDance's business interests, and that the enforcement of Article 9 does not unreasonably restrict [Provena] from engaging in SunDance's Services.  The parties acknowledge that a breach of the covenants contained in this Article 9 shall have irreparable, material and adverse effects on SunDance and damages arising from any such breach may be difficult to ascertain.  Without limiting any other available remedies, SunDance shall have the right to equitable relief, including, but not limited to, an immediate injunction to enjoin [Provena's] breach of this Article 9 and, if permitted by applicable law, the right to liquidated damages in an amount equal to one hundred percent (100%) of the employee's annual salary.

3

**SunDance's Performance Of Its Contractual Obligations**

19.    During the entire term of the Agreement, Provena did not notify SunDance of any material breach by SunDance of any of SunDance's obligations under the Agreement.

20.    SunDance at all times provided the services required by the Agreement.

**Provena's Notice To SunDance Of Its Intent To Terminate The Agreement**

21.    By letter dated September 26, 2007, Provena notified SunDance that it was terminating the Agreement in its entirety, effective November 1, 2007.  A copy of the September 26, 2007 termination notice is attached hereto as Exhibit 2 and incorporated herein by this reference.

**Provena's Misconduct During The Term Of The Agreement**

22.    Select Rehabilitation Corporation ("Select Rehabilitation") is a direct competitor of SunDance.

23.    On information and belief, on or before September 27, 2007, Provena negotiated with Select Rehabilitation, the result of which was that Select Rehabilitation would replace SunDance as the therapy-services provider to Provena's patients.  Select Rehabilitation was to replace SunDance upon termination of the Agreement between Provena and SunDance.

24.    At least as early as September 27, 2007, Provena began directly communicating with SunDance employees who had been providing therapy services to Provena's patients pursuant to the Agreement.  A copy of one such communication, a one-page fax entitled "Next Steps," is attached as Exhibit 3 hereto and incorporated herein by this reference.

25.    On information and belief, Provena provided to Select Rehabilitation personnel information regarding SunDance employees, which employees Provena desired to be retained by Select Rehabilitation to provide services to Provena's patients.

4

26.    Provena's communications to SunDance employees was in furtherance of at least two purposes:  to advise SunDance employees that Provena wanted them to continue providing therapy services to Provena's patients; and to encourage SunDance employees to seek employment with Select Rehabilitation.

27.    Provena engaged in such communications with SunDance employees without the consent or approval of SunDance.

28.    Provena engaged in such communications with SunDance employees at a time that said employees remained in SunDance's employ.

29.    At the time of the communications between Provena and SunDance's employees, SunDance had no intention of unilaterally terminating the employment of those employees.

30.    Provena provided to Select Rehabilitation personnel information on SunDance employees without the consent or approval of SunDance.

31.    Provena provided to Select Rehabilitation personnel information on SunDance employees at a time that said employees remained in SunDance's employ.

32.    At the time Provena provided to Select Rehabilitation personnel information on SunDance's employees, SunDance had no intention of unilaterally terminating the employment of those employees.

**SunDance's Notice To Provena Of Its Contractual Rights**

33.    By letter dated September 28, 2007 from SunDance to Provena, SunDance notified Provena that Provena had engaged in conduct that violated Article 9 of the Agreement. SunDance also expressly directed Provena to cease and desist from soliciting SunDance employees or inducing SunDance employees to terminate their employment with SunDance. SunDance further advised Provena that, if it did not cease its unlawful conduct, SunDance would

seek judicial relief, including seeking liquidated damages under Article 9 and its attorneys' fees under Article 10.  A true and correct copy of the September 28, 2007 letter is attached as Exhibit 4 hereto and incorporated herein by this reference.

34.    Provena did not reply to the September 28, 2007 letter from SunDance.

### Provena's Delaying Tactics

35.    On information and belief, after receipt of the September 28, 2007 letter from SunDance, Provena continued to directly contact SunDance employees to encourage them to seek employment at Select Rehabilitation so that they would continue to provide therapy services to Provena's patients.

36.    SunDance suspected that Provena was intentionally ignoring the September 28, 2007 letter; that Provena was intentionally ignoring Article 9 of the Agreement; and that Provena intended to have all or almost all of SunDance's therapists who had provided services to Provena's patients continue to provide such services.  SunDance believed that the stratagem used by Provena to succeed in this regard was to assist Select Rehabilitation in inducing SunDance's employees to resign from SunDance and in becoming employed by Select Rehabilitation to perform the same services for Provena that they had performed while employed by SunDance.  SunDance believed that Provena wanted Select Rehabilitation to have hired SunDance's employees in time to permit those employees to seamlessly continue providing therapy services to Provena's patients following the November 1, 2007 change in therapy-services providers from SunDance to Select Rehabilitation.

37.    Believing that Provena deliberately was ignoring the September 28, 2007 letter, on October 11, 2007 SunDance had its counsel send another letter to Provena.  The October 11, 2007 letter essentially reiterated the demands of the September 28 letter—that Provena honor its

obligations under Article 9. The letter also advised Provena that SunDance would take appropriate legal steps to enforce its rights, if necessary, and it advised Provena that Provena must respond to the letter by October 18, 2007. A true and correct copy of the October 11, 2007 letter is attached hereto as Exhibit 5 and incorporated herein by this reference.

38.     By letter dated October 18, 2007, Provena responded to the October 11 letter. In the letter, Provena essentially denied that Article 9 prohibited it from engaging in the conduct that it had engaged in.

39.     On October 19, 2007, SunDance's counsel spoke with Provena's in-house counsel in an effort to avoid litigation; and the two agreed to speak again on October 23. This conversation was memorialized in a letter of that same date. The October 19, 2007 letter is attached as Exhibit 6 hereto and incorporated herein by this reference.

40.     Provena's in-house counsel and SunDance's counsel spoke on October 23, 2007, but no specific proposal was made to resolve the matter, as Provena's in-house counsel stated he still needed to speak to others at Provena, and that he thought he would be in a position to further discuss a resolution on October 25, 2007. This conversation was memorialized in a letter dated October 25, 2007, a true and correct copy of which is attached hereto as Exhibit 7 and incorporated herein by this reference.

**Provena's Refusal To Honor The Liquidated Damages Provision Of The Agreement**

41.     On October 26, 2007, Provena's litigation counsel contacted SunDance's counsel and advised of their representation regarding this matter.

42.     Subsequently, through counsel, the parties unsuccessfully discussed whether this matter could be resolved.

43.    On November 2, 2007, SunDance sent an invoice to Provena.  The invoice reflected those SunDance employees whom SunDance had reason to suspect were continuing to provide therapy services to Provena's patients in violation of Article 9 of the Agreement, and it sought the agreed-upon liquidated damages for each such employee.  SunDance expressly requested that, if SunDance had included on the invoice employees who were not being used to provide therapy services to Provena's patients, then Provena should so notify SunDance of the error.  Provena was given until November 15, 2007, to pay the invoice.  A true and correct copy of the November 2, 2007 letter and the enclosed invoice is attached as Exhibit 8 hereto and incorporated herein by this reference.

44.    By letter dated November 14, 2007, Provena's litigation counsel advised SunDance's counsel that Provena would not pay the invoice.  A true and correct copy of the November 14, 2007 letter is attached as Exhibit 9 hereto and incorporated herein by this reference.

45.    In fact, as of the date of this filing, Provena has not paid the invoice or otherwise compensated SunDance pursuant to Article 9 of the Agreement.

46.    As of the date of this filing, Provena has not advised SunDance of any employee identified on the invoice who is not, in fact, providing therapy services to Provena's patients. This is further evidence that Provena is using former SunDance employees to continue to provide therapy services to Provena's patients in violation of Article 9 of the Agreement.

## Compliance With The Agreement Imposes No Undue Hardships

47.    If Provena had refrained for one year from using the services of SunDance's (now former) employees, there would have been no undue hardship on the employees, as they would

have remained able to work for any employer—including Select Rehabilitation—and at any facility, excepting only those Provena facilities that were covered by the Agreement.

48.    Moreover, Provena itself was and is not completely barred from using the employees.  It could have elected to pay the agreed-upon liquidated damages amount for any employee it wished to use.

49.    Provena's failure to abide by Article 9 imposes an undue hardship on SunDance. SunDance's employees are its only real assets.  If Provena is permitted to disregard its promises in Article 9, it essentially would then be permitted—as it has done—to deprive SunDance of its investment in its workforce and turn that investment over to SunDance's competition.  And it has done so without compensating SunDance.

<u>COUNT I:</u>
<u>BREACH OF CONTRACT</u>

50.    SunDance re-alleges the allegations of Paragraph Nos. 1-49 above as if fully set forth herein.

51.    As of November 1, 2007, Article 9 of the Agreement prohibits Provena from using the services of the therapists previously employed by SunDance and who, during the 12 months preceding the termination of the Agreement, had provided therapy services under the Agreement.

52.    Because it is using therapists encompassed by the prohibition of Article 9 of the Agreement, Provena has breached Article 9.

53.    And, by failing to pay the liquidated damages called for by Article 9 of the Agreement, Provena also is in breach of Article 9.

54.    Because the actual damages to SunDance are difficult if not impossible to measure precisely, it should be awarded the liquidated damages set forth in Article 9 of the

Agreement.  In the event the Court were to disregard the liquidated damages provision of Article 9, SunDance reserves the right to seek actual damages in an amount to be proved at trial.

WHEREFORE, SunDance prays for the following relief:

A.      That Provena be ordered to pay the liquidated damages agreed upon in Article 9 of the Agreement;

B.      That, in the event the Court declines to enforce the liquidated damages provision of Article 9 of the Agreement, SunDance be awarded its damages in an amount to be proven at trial;

C.      That Provena be ordered to pay to SunDance its reasonable attorneys' fees and costs incurred in enforcing its rights under Article 9 of the Agreement; and

D.      For such other and further relief as the Court deems appropriate.

**COUNT II:**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

55.      SunDance re-alleges the allegations of Paragraph Nos. 1-54 above as if fully set forth herein.

56.      SunDance had existing employment relationships with its employees at the time that Provena induced and encouraged them to seek employment at Select Rehabilitation.

57.      Provena knew of SunDance's employment relationships with those employees.

58.      Provena intentionally and improperly interfered with SunDance's relationships with its employees by soliciting, inducing, and/or encouraging them to seek employment with Select Rehabilitation.

59.      Provena's intentional interference with SunDance's relationships with its employees has damaged SunDance in an amount to be proved at trial.

WHEREFORE, SunDance prays for the following relief:

A.      That it be awarded its damages in an amount to be proved at trial;

B.      That it be awarded punitive damages as a result of Provena's unlawful conduct;

and

C.      For such other and further relief as the Court deems appropriate.

Respectfully submitted,

DATED:  November 27, 2007

SUNDANCE REHABILITATION
CORPORATION


By:___/Peter R. Bulmer/_____
        Its Attorney

Peter R. Bulmer
Jackson Lewis LLP
320 West Ohio Street, Suite 500
Chicago, IL 60610
(312) 787-4949 (Telephone)
(312) 787-4995 (Facsimile)
Attorneys for Plaintiff

EXHIBIT 1

# THERAPY SERVICES AGREEMENT

**THIS THERAPY SERVICES AGREEMENT** ("Agreement") is entered into effective January 1, 2002 ("Effective Date"), between **SunDance Rehabilitation Corporation,** a Connecticut corporation ("SunDance") and **Provena Health Services, Inc.,** located at 200 East Court Street, Kankakee, Illinois 60901 ("Operator"), which operates facilities listed on Exhibit B of this Agreement. **("Facility")**.

**SunDance and Operator, intending to be legally bound, agree as follows:**

**ARTICLE 1. SUNDANCE SERVICES.** SunDance shall provide therapy services ("Services") at the Facility as follows:

**1.1    Provision of Services.** SunDance shall provide, through licensed and qualified personnel and in accordance with physician's orders and the applicable plan of care, the following Services to residents at the Facility ("Residents") during normal business hours following authorization in accordance with the provisions of this Agreement and applicable law and payor requirements:

| YES | NO | Initials | |
|-----|-----|----------|---|
| X | ☐ | _____ | Speech-language pathology evaluations and treatment; |
| X | ☐ | _____ | Physical therapy evaluations and treatment; |
| X | ☐ | _____ | Occupational therapy evaluations and treatment. |

**1.2    Documentation.** SunDance shall keep and maintain records of the Services as required by (1) federal, state and local laws and regulations and (2) applicable third party payors. Notwithstanding the foregoing, Operator shall be solely responsible for obtaining any and all consents, releases, and approvals that are required by applicable law or otherwise for the provision of Services to a Resident, including, without limitation, consents from any applicable payor, the Resident, the Resident's responsible party or other party.

**1.3    Evaluations and Plan of Care.** SunDance shall evaluate and determine the type, frequency and duration of Services needed by a Resident, and make recommendations for the establishment of long-term and short-term goals for the Resident, taking into account the following factors: (1) the Resident's medical history, physical condition, diagnosis and prognosis; (2) coverage and medical necessity criteria imposed by Medicare, Medicaid, or by other third party payors; and (3) the Resident's responses to treatment.

**1.4    Physician Liaison.** SunDance shall assist Operator in making recommendations to and consulting with a Resident's physician regarding the Services, provided that Operator/Facility shall retain such authority, and maintain such involvement and control over the Resident's care, as is required under applicable law, including, without limitation, state licensing laws and regulations and the federal requirements of participation for long term care facilities.

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

1.5    **Qualifications.**   SunDance therapists shall have and maintain all qualifications, certifications and licenses required by federal, state and local laws and regulations to provide Services under this Agreement.  Upon reasonable request from Operator, SunDance shall provide documentation and/or information regarding the qualifications, certifications, and licenses of its therapists rendering Services at the Facility.

1.6    **Approvals.**  SunDance is not required to provide any Services to a Resident unless such Services are authorized by Operator pursuant to paragraph 2.2 below and otherwise authorized under applicable legal and regulatory requirements, including, but not limited to, any requirements relating to authorization of treatment from a Resident's physicians.  Operator shall designate an individual to whom SunDance shall report and upon whose authority SunDance shall be entitled to rely for directions and approvals in connection with this Agreement.

## ARTICLE 2. CERTAIN RESPONSIBILITIES OF OPERATOR.

2.1    **Operations and Notice of Adverse Events.**   Operator shall operate the Facility in accordance with all applicable federal, state and local laws and regulations, maintain in good standing all federal, state and local licenses and certifications required to operate the Facility and provide Services to Residents.   Within five (5) days of receipt by Operator, Operator shall deliver to SunDance notification of any actual or threatened revocation or suspension of Operator's licenses or certifications affecting its ability to operate the Facility and provide Services to Residents.

2.2    **Resident Authorization.**   Operator shall consider SunDance's evaluation and recommendations in its care planning process, subject to the medical orders and recommendations of the Resident's physicians.  Operator shall determine Resident eligibility for Services and obtain all authorizations necessary to submit claims for reimbursement on behalf of Residents.   Subject to SunDance's consent, Operator may authorize SunDance to assist it in obtaining such authorizations, including, but not limited to, obtaining physician orders and therapeutic informed consent from the Residents and/or their responsible parties.

2.3    **Space, Equipment, and Support Services.**  Operator, at its sole expense, shall provide and maintain adequate working space, equipment, supplies and support staff for the provision of Services at the Facility.  Equipment and materials placed at the Facility by SunDance shall be used exclusively for the purposes of this Agreement and shall remain the property of SunDance.  Upon termination of this Agreement or at SunDance's request, Operator shall return all such equipment and materials in the same condition as when placed at the Facility by SunDance, subject to reasonable wear and tear.

2.4    **Identification of Principals/Owners and Change of Ownership.**

2.4.1.    To the extent reasonably possible, Operator shall provide thirty (30) days prior written notice to SunDance of a Change of Control of the Facility.  If prior notice is not reasonably possible, then notice of a Change of Control shall be provided by Operator to SunDance as soon as reasonably possible and no later than five (5) days following such Change of Control.  Such notice shall include the name, address and telephone number of: (1) any person or entity that will obtain an ownership or other interest in the Facility by virtue of such Change of Control; and (2) any person implementing the Change of Control ("Escrow Agent").  At the closing for the Change of Control, Operator shall cause Escrow Agent to disburse to SunDance all amounts owed for Services rendered through the date of closing.  For purposes of this paragraph 2.4.1. and this Agreement, a "Change of Control" shall be deemed to have occurred upon: (1) the sale of all or substantially all of the assets of

2

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

Operator/Facility; (2) the merger or consolidation of Operator/Facility; (3) the sale of more than fifty percent (50%) of the equity interests or voting control of Operator/Facility; or (4) the other sale or transfer of the right to control the management and business of Operator/Facility.

**2.5    Notice of Adverse Actions.**  Operator shall immediately notify SunDance in writing of any legal, administrative or governmental surveys, investigations, reviews, or proceedings initiated (1) against SunDance or (2) against Operator with respect to Services provided by SunDance.

**2.6    Work Environment.**  To the fullest extent permitted by applicable law, Operator shall provide to SunDance, its employees, representatives and agents all necessary or appropriate information and/or special education regarding hazardous or infectious substances or infections to which SunDance, its employees, agents or representatives may be exposed at the Facility.  Operator shall provide adequate protective gear to SunDance employees, agents or representatives to protect them from hazards or infections at the Facility.  Operator agrees to cooperate in any investigation relating to any SunDance employee, agent or representative who is injured or exposed to any hazardous or infectious substance at the Facility, including, but not limited to, providing information regarding any infectious condition of Residents to whom the employee, agent or representative may have been exposed at the Facility.

## ARTICLE 3. COMPENSATION, FEE SCHEDULES, AND REIMBURSEMENT.

**3.1    Election of Compensation.**  Operator shall pay SunDance for Services rendered in accordance with the fee schedules and other information set forth in Exhibit A, which is hereby incorporated into the terms of this Agreement.

**3.2    Payment.**  Except as otherwise provided in this Agreement or the Exhibits attached hereto, Operator shall pay SunDance for Services rendered within thirty (30) days of receipt of an invoice from SunDance for such Services and irrespective of a Resident's ability to pay or receipt of funds from any third party payor or other source of payment for such Services. SunDance shall not seek reimbursement for Services from any Resident unless permitted under applicable law and agreed to by Operator and any applicable third party payor.  Operator shall pay a service fee of 1.5% (or the maximum rate allowed by law) per month on all amounts due and owing to SunDance that are not paid by Operator within sixty (60) days of receipt of invoice for such Services.  If Operator fails to make payment for Services within sixty (60) days of receipt of invoice, SunDance may refuse to provide additional Services at the Facility and/or terminate this Agreement upon thirty (30) days prior written notice to Operator, which notice may be sent by SunDance at such time as such payment becomes past due (*i.e.* thirty-one (31) days after receipt of invoice by Operator for such Services). Operator shall send all payments for Services to SunDance at the following address:

> **SunDance Rehabilitation**
> **P.O. Box 223671**
> **Chantilly, Virginia 20153-3671**

**3.3    Submission of Claims to Payors.**  Except as otherwise provided herein or required by applicable law or regulation, Operator shall be solely responsible for seeking reimbursement for Services rendered from applicable governmental or third party payors, fiscal intermediaries or Residents.  Within fifteen (15) days of SunDance's request, Operator shall deliver copies of claims for reimbursement for Services and any cost reports or other documentation filed in support of such

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

claims to SunDance.  Operator is responsible for the timeliness, accuracy and completeness of all such claims.

**3.4    Documentation.**  Prior to transmitting any claim to any third party payor for Services, Operator shall ensure, with appropriate SunDance assistance, that all supporting documentation is available to demonstrate that such Services and/or related supplies were actually and appropriately provided to a Resident.  SunDance shall not be responsible for any errors or omissions in documentation or information for Services provided to any third party payor unless such errors or omissions resulted solely and directly from SunDance's failure to prepare and maintain documentation of Services in accordance with its obligations under this Agreement.

**3.5    Information.**  Operator shall deliver to SunDance current information concerning the identity and eligibility of Residents who are to receive Services, any applicable third party payors, any applicable benefit limitations and requirements, and any other similar information reasonably requested by SunDance, and shall promptly notify SunDance of any changes in such information. Operator shall provide SunDance with access to information that is necessary for SunDance to provide and maintain appropriate written documentation of Services for purposes of Operator's submission of claims for reimbursement and/or payment for Services in accordance with the requirements of applicable law and third party payors.

**3.6    Right to Payment.**  Except as otherwise provided in this Agreement or the Exhibits attached hereto, SunDance's right to payment from Operator for Services furnished under this Agreement shall not be contingent upon Operator's ability to collect amounts billed to any applicable payment program or any individual Resident.   Operator shall ensure, with SunDance's cooperation pursuant to its obligations set forth in this Agreement, the medical necessity of all Services.  Operator shall also ensure the complete, timely and accurate submission of all bills or claims submitted to any Resident or payor.  Operator is responsible for the complete, accurate and timely completion and submission of all Resident assessments, as required under applicable law and regulations, including, without limitation, federal requirements of participation and reimbursement rules.   Payment to SunDance shall be made regardless of whether Operator fails to comply with the applicable requirements for reimbursement or payments, including, but not limited to, failure to conduct any required Resident assessments or to transmit the results of any such assessments to the federal Center for Medicare and Medicaid Services or to the state licensing and certification agencies.

## ARTICLE 4.  CLAIMS REVIEW AND APPEALS.

**4.1    Denied Claims.**  If SunDance receives payment from Operator for Services, reimbursement for which Services is thereafter denied or recaptured by an applicable third-party payor and such denial or recapture is solely and directly attributable to the acts or omissions of SunDance in (i) rendering Services that were not medically necessary or (ii) not providing timely, accurate and complete invoices or other documentation of Services necessary for Operator to submit claims for payment or reimbursement for such Services (a "Denied Claim"), SunDance shall promptly credit the portion of the Denied Claim actually received by it to Operator upon SunDance's determination not to appeal such Denied Claim or, if such Denied Claim is appealed pursuant to the provisions of this Article 4, upon exhaustion of all administrative and judicial levels of appeal and a final determination pursuant to such appeal to uphold the Denied Claim.

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

**4.2    Appeals of Denied Claims.** As to any Denied Claim, Operator shall pursue, in conjunction with SunDance or, at SunDance's request shall appoint SunDance as Operator's/Facility's agent to pursue, all rights of rehearing and administrative and judicial appeal of such Denied Claim. Operator and SunDance shall reasonably cooperate in the timely and adequate preparation and prosecution of any appeals of Denied Claims by Operator and/or SunDance.

**4.3    Notice.** Operator shall provide SunDance with a copy of any written or electronic notice from any third party payor or other source of a Denied Claim for Services rendered under this Agreement. Operator must notify the SunDance Appeals Coordinator within three (3) business days of receipt of such notice by Operator/Facility. The SunDance Appeals Coordinator will issue a Denied Claim Tracking Number to the Operator for reference of each denied claim. If Operator does not timely notify SunDance of a Denied Claim as required by this paragraph 4.3, SunDance shall be entitled to receive and retain full payment for such Denied Claim from Operator and shall have no obligation to refund any portion of such Denied Claim to Operator under this Article 4, and Operator shall have no right of offset for such amounts.

Denied Claims for service reported by the Operator after February 1, 2002 will not be indemnified as required by Article 4 of this Agreement unless a Denied Claim Tracking Number is assigned as required by this paragraph 4.3.

**4.4    Waivers.** To the extent applicable, claims paid under Medicare's Waiver of Liability are considered paid claims and are excluded from indemnification pursuant to this Article 4. In addition, SunDance shall have no obligation to indemnify Operator under this Article 4 if Operator personnel have failed to adequately ascertain and document a Resident's eligibility for Services or ability to pay for such Services.

**4.5    Direct Charges Only.** The obligation to indemnify Operator for Denied Claims under this Article 4 shall not include any amounts attributable to Operator's administrative charges, but is limited to only those direct charges related to Services delivered by SunDance and actually paid to SunDance by Operator for such Services. The provisions of Article 4 apply only to Denied Claims as to which appeals right exists.

**4.6    Recovered Amounts.** If Operator is entitled to indemnification pursuant to this Article 4, SunDance may offset the amount of the Denied Claim previously paid to SunDance against amounts due and owing at that time from Operator for Services. If for some reason Operator receives payment for such Denied Claim from any source after Operator has received indemnification from SunDance for such Denied Claim, Operator shall refund the full amount of such indemnification to SunDance within seven (7) business days of Operator's receipt of payment from such other source. Operator shall comply with all applicable laws, regulations and reporting requirements with respect to any amounts for which Operator receives indemnification from SunDance pursuant to this Article 4.

**ARTICLE 5. INSURANCE.** SunDance shall obtain insurance coverage for any acts of professional malpractice or other negligence committed at the Facility by SunDance's therapists at coverage levels required by applicable law, but in no event less than one million dollars ($1,000,000) per claim or occurrence and three million dollars ($3,000,000) in the aggregate per year. Operator/Facility shall maintain similar insurance at levels required by law, but in no event less than one million dollars ($1,000,000) per claim or occurrence and three million dollars ($3,000,000) in the aggregate per year.

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

Both parties shall maintain workers' compensation insurance for all of their respective employees in such amounts as may be required by applicable law. SunDance shall provide the Operator/Facility with copies of all insurance policies obtained by such party pursuant to this Article 5. Each party shall provide the other party with not less than thirty (30) days prior written notice of any expiration or cancellation of any insurance policy or policies obtained pursuant to this Article 5. Consistent with applicable federal, state and local laws and regulations, SunDance or Operator may at any time elect to self-insure under one or more self-insurance programs with respect to any or all of the insurance coverage required under this Article 5.

## ARTICLE 6. TERM AND TERMINATION

**6.1      Term.** The initial term of this Agreement shall commence on the Effective Date and shall continue for one (1) year from the Effective Date. The parties agree that the compensation provisions in this Agreement shall be reviewed and renegotiated in good faith by the parties on an annual basis.

**6.2      Termination.** Either party may terminate this Agreement at any time, with or without cause, effective upon delivery to the other party of at least thirty (30) days prior written notice of termination. Additionally, this Agreement may be terminated as follows:

**6.2.1.**   Any party may terminate this Agreement immediately if the other party: a) makes an assignment for the benefit of creditors or is the subject of a bankruptcy or other proceeding under state or federal law, b) liquidates or appoints a receiver with respect to its assets, c) breaches any of the representations and warranties of Article 8 of this Agreement, d) is excluded from participation in any health care program, including, but not limited to, the Medicare and Medicaid programs or e) is convicted of a felony.

**6.2.2.**   SunDance may terminate this Agreement immediately with written notice upon termination or suspension of Operator's/Facility's certification, license, or other approval necessary to operate the Facility or render Services.

**6.2.3.**   With respect to any other material breach of this Agreement, the non-breaching party may terminate this Agreement upon thirty (30) days prior written notice to the breaching party if the breach is not cured within thirty (30) days following delivery of such notice, which shall describe the acts or omissions constituting the breach. For purposes of this paragraph 6.2.3., a material breach of this Agreement includes, without limitation, (a) the failure by Facility/Operator or any of its affiliates to timely remit payment for Services under this Agreement or any other Agreement with SunDance or any of its affiliates; (b) the failure to notify SunDance of any change in the status of Facility/Operator's licenses or certifications; or (c) the failure to produce any documents requested by SunDance in accordance with the terms of this Agreement. A material breach by Operator/Facility or any of its affiliates of any other agreement that Operator/Facility or any of its affiliates has entered into with SunDance or any of its affiliates shall constitute a material breach under this Agreement.

**6.3      Post-Termination.** Upon termination of this Agreement, all rights and obligations of the parties hereunder shall be terminated, except those rights and obligations set forth in Articles 3, 4, 7, 8, 9, 10.4, 10.7 and 10.11 of this Agreement.

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

## ARTICLE 7. CONFIDENTIAL INFORMATION AND RECORDS.

7.1    **Confidential Information.**  Each party shall use its best efforts to preserve the confidentiality of all confidential and/or propriety information disclosed to the other party in connection with this Agreement, including, without limitation, nonpublic financial information, manuals, protocols, policies, procedures, marketing, and strategic information, client lists, computer software, training materials, Resident health information, Resident records, and Resident care and outcomes data ("Confidential Information"). No party shall use for its own benefit or disclose or otherwise disseminate to third parties, directly or indirectly, any other party's Confidential Information without prior written consent from the other party. Upon termination of this Agreement, all Confidential Information and copies thereof shall be returned to the party that owns and/or provided such Information. Each party shall comply with applicable federal, state and local laws and regulations with respect to all Confidential Information, including, but not limited to, any disclosures thereof pursuant to this paragraph 7.1.

7.2    **Resident Records.**  Operator shall be solely responsible for maintaining all Resident records, including, but not limited to, MDS assessments and RUGs III classifications, relating to the provision of Services. Operator shall make available to SunDance for review and inspection on a timely basis and upon request, individual patient treatment, MDS assessments and RUGs III classification records necessary for proper evaluation, screening, treatment, provision and documentation of Services. Subject to applicable law, SunDance may incorporate copies of such records into its own records and Operator shall, where required, obtain all consents necessary to permit such access to and disclosure of Resident records to SunDance. SunDance and Operator/Facility agree to comply with all federal, state and local laws and regulations applicable to the maintenance, disclosure, treatment or other use of such Resident records. Residents' medical records are Operator's property and originals of such records shall be maintained at the Facility. Internal records maintained by SunDance, but not incorporated into Operator's medical records, are SunDance's property, and shall be removed by SunDance from the Facility upon termination of this Agreement.

7.3    **Access to Records.**  Until the expiration of four years after the furnishing of Services, SunDance shall make available to the Secretary of the U.S. Department of Health and Human Services, the U.S. Comptroller General, or their duly authorized representatives, this Agreement, any subcontracts, and such other books, documents, and records that are necessary to certify the nature and extent of costs for Services pursuant to 42 U.S.C. 1395x(v)(1)(I) and 42 C.F.R. Part 420, Subpart D, Section 420.300 *et seq.*, and any other applicable law or regulation. If SunDance carries out any of the duties of this Agreement through a subcontract worth Ten Thousand Dollars ($10,000) or more over a twelve (12) month period with a sub-contractor or with a related organization, the subcontract shall also contain an access clause to permit access by the Secretary, Comptroller General, and their authorized representatives to the subcontractor's books and records subject to the same contingencies noted above. Any disclosure under this paragraph 7.3 shall not be construed as a waiver of any other legal rights to which SunDance may be entitled under applicable law or regulations.

## ARTICLE 8. REPRESENTATIONS AND WARRANTIES/INDEMNIFICATION.  Each party represents and warrants to the other party: (1) that such party's representative executing this Agreement is authorized to execute and enter into this Agreement on such party's behalf; (2) that such party has the right and authority to undertake all acts that it is required to undertake under this Agreement; (3) that neither such party, nor any individual or entity with a direct or indirect ownership or control interest of five percent (5%) or more of such party, nor any director, officer, agent or

7

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

employee of such party, is debarred, suspended or excluded under any state or federal healthcare program; and (4) that such party shall provide goods and/or services and otherwise carry out its obligations under this Agreement in compliance with all applicable federal, state and local statutes, laws, regulations and ordinances. Operator/Facility hereby agrees to indemnify, defend and hold harmless SunDance, its affiliates and its successors and assigns, and their respective officers, directors, employees, agents, and representatives, from and against any and all demands, claims, allegations, assertions, actions or causes of action, assessments, losses, damages, deficiencies, liabilities, costs and expenses (including, but not limited to, reasonable attorneys' fees), interest, penalties, and all reasonable amounts paid in investigation, defense or settlement of any of the foregoing ("Claims") asserted against, imposed upon, resulting to, required to be paid by, or incurred by SunDance, directly or indirectly, in connection with, relating to or arising as a result of (i) personal injury or property damage to the extent such injury and/or property damage results from the gross negligence or willful misconduct of Operator/Facility or its employees, agents or representatives; or (ii) Operator's/Facility's breach in any material respect of the terms and conditions of this Agreement or any representation or warranty contained in this Agreement. SunDance hereby agrees to indemnify, defend and hold harmless Operator/Facility, its affiliates and successors and assigns, and their respective officers, directors, employees, agents, and representatives, from and against any and all Claims asserted against, imposed upon, resulting to, required to be paid by, or incurred by Operator/Facility, directly or indirectly, in connection with, relating to or arising as a result of (i) personal injury or property damage to the extent such injury and/or property damage results from the gross negligence or willful misconduct of SunDance or its employees, agents or representatives; or (ii) SunDance's breach in any material respect of any representation or warranty contained in this Agreement. Operator/Facility shall send written notice to SunDance within fourteen (14) days of the assertion of a Claim in a complaint or otherwise of the assertion of a Claim, or service of a complaint, and shall fully cooperate in the defense thereof by counsel of SunDance's choice. The parties' rights to indemnification set forth in this Article 8 are non-exclusive and are not intended to affect in any way any other rights of the parties to indemnification under applicable federal, state or local laws and regulations.

**ARTICLE 9. SUNDANCE EMPLOYEES.** During the term of this Agreement and for one (1) year following termination, Operator/Facility shall not, directly or indirectly (*e.g.*, by hiring or using another individual or entity that hires SunDance's employees or contractors, or as an owner, operator, manager, partner, member or five percent (5%) or more shareholder), employ or contract with (i) any SunDance employee, agent or representative who provided, managed or otherwise was involved in the provision of Services at the Facility within the previous one (1) year; or (ii) any business enterprise or other entity in which such employee, agent or representative owns a ten percent (10%) or greater interest. Operator shall not induce any SunDance employee, agent or representative to terminate his/her relationship with SunDance. The parties acknowledge that the restrictions set forth in this Article 9 are reasonable in scope and essential to SunDance's business interests, and that the enforcement of this Article 9 does not unreasonably restrict Operator/Facility from engaging in SunDance's Services. The parties acknowledge that a breach of the covenants contained in this Article 9 shall have irreparable, material and adverse effects on SunDance and damages arising from any such breach may be difficult to ascertain. Without limiting any other available remedies, SunDance shall have the right to equitable relief, including, but not limited to, an immediate injunction to enjoin Operator's breach of this Article 9 and, if permitted by applicable law, the right to liquidated damages in an amount equal to one hundred percent (100%) of the employee's annual salary.

8

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

## ARTICLE 10.  GENERAL PROVISIONS.

**10.1    Independent Contractors.**  This Agreement is a contract between independent parties and shall not be construed to create any relationship other than that of independent contractors. Each party shall act and perform as an independent contractor with respect to the other party.  Neither party shall represent that it has any authority to assume or create any obligation, express or implied, on behalf of the other party, or to represent the other party as agent, employee, or in any other capacity, except as specifically provided in this Agreement.

**10.2    Exclusivity.**  Subject to Resident freedom of choice, SunDance shall be the sole provider of Services at the Facility during the term of this Agreement.

**10.3    Compliance with Applicable Laws.**  Each party shall comply with applicable federal, state and local laws and regulations in performing under this Agreement, including, but not limited to, Title VI of the Civil Rights Act of 1964, and all other applicable laws and regulations regarding discrimination on the ground of race, age, color, sex, handicap, national origin, religion, disability, or exclusion from participation or denial of benefits under any program or activity provided by any party.

**10.4    Governing Law and Consent to Jurisdiction.**  This Agreement is made and entered into in the State of Illinois.  The validity, construction, interpretation, effect and enforceability of this Agreement shall be governed by the laws of the **State of Illinois.**  The parties to this Agreement hereby agree, consent and submit to the exclusive jurisdiction of the federal and state courts of the **State of Illinois** to resolve all disputes, controversies, disagreements, suits, or proceedings between the parties arising from or related to this Agreement. Each party agrees not to assert any claim that such actions instituted in the courts of the State of Virginia are brought in an inconvenient forum or that venue is improper.  THE PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY AND ALL DISPUTES UNDER AND/OR RELATED TO THIS AGREEMENT.

**10.5    Notices.**  All notices or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given: (1) when personally delivered, return receipt requested, by a party hereto, or by messenger, to a person at the address listed below; (2) by next day express courier, return receipt requested; or (3) upon delivery or refusal of same after having been mailed by registered or certified mail, return receipt requested, postage prepaid.  All notices are to be sent and addressed as follows:

| OPERATOR/FACILITY | SUNDANCE |
|---|---|
| Provena Health, Inc. | SunDance Rehabilitation Corporation |
| Attention: Connie March | Attention: Contract Administrator |
| 200 East Court Street | 803 Cameron Street |
| Kankakee, Illinois 60901 | Alexandria, VA 22314 |

Any party may change its notice address from time to time by written notice to the other party in accordance with this paragraph 10.5.

**10.6    Severability/Waiver.**  Any portion or provision of this Agreement that is invalid, illegal or unenforceable under applicable law shall be ineffective only to the extent of such invalidity, illegality

9

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

or unenforceability, without affecting in any way the validity, legality or enforceability of the remaining portions or provisions in this Agreement.

**10.7     Attorneys' Fees.** Operator/Facility shall reimburse SunDance for all collection agency and attorney collection fees, and all attorney fees and court costs relating to any legal action that SunDance brings to collect payment for Services from Operator/Facility.

**10.8     Entire Agreement.** This Agreement contains the complete and entire agreement between the parties, and supersedes all prior proposals, agreements and representations, related to the subject matter of this Agreement. No changes, alterations, modifications or qualifications to the terms contained in this Agreement shall be made or be binding upon the parties unless specifically consented to in writing by the parties' authorized representatives.

**10.9     Medicare + Choice.** Operator represents and warrants that it currently has no Residents with health insurance coverage for Services under Part C of Title XVIII of the federal Social Security Act and its implementing regulations (the "Medicare + Choice Program"). Operator agrees to promptly notify SunDance in writing if any Resident obtains health insurance coverage under the Medicare + Choice Program, which notification shall be sent to the following address: SunDance Rehabilitation Corporation, Attention: Contract Administrator, 803 Cameron Street, Alexandria, VA 22314. In the event of such notification of Medicare + Choice coverage, the parties agree to negotiate in good faith and sign any amendments to this Agreement in order to comply with the Medicare + Choice program requirements or any other federal, state or local laws or regulations.

**10.10     Failure to Declare Default.** Failure of either party to enforce the provisions of this Agreement or to require the other party to perform any of the provisions of this Agreement shall not be construed to be a waiver of such provisions, nor shall it affect the right of either party to subsequently enforce any provision of this Agreement.

**10.11     Assignment.** This Agreement may not be assigned by either party without the express written consent of the other party, which consent shall not be unreasonably withheld, except that either party may assign this Agreement without the other party's consent: (1) to an entity that the assigning party is controlled by, is under common control of or controls; or (2) in connection with the merger, consolidation, reorganization, recapitalization or sale of all or substantially all of the assets of the assigning party.

**10.12     Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall be deemed to be one and the same instrument.

**10.13     Durability.** This Agreement shall inure to the benefit of and be binding on the Operator/Facility, SunDance and their respective successors and assigns.

**10.14     Captions.** All section captions and headings in this Agreement are provided for informational purposes only and shall not be relevant to or affect the interpretation or construction of any provisions of this Agreement.

Copyright SunDance Healthcare Corporation
Form Date: December 10, 2001

10.15    Compliance Agreement. SunDance agrees to provide its services in compliance with any and all applicable federal and state laws and regulations governing the confidentiality of patient information. Further, if and to the extent, and for so long as required by the provisions of the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. Sec. 1171 et seq.) and the regulations promulgated thereunder, all as amended from time to time (collectively, HIPAA) but not otherwise. SunDance will appropriately safeguard all Protected Health Information (as such term is defined in HIPAA) made available to SunDance by, or obtained by SunDance from Operator (or any of its employees, contractors, or agents) in compliance with HIPAA.

SunDance has reviewed and understands Operator's Standards of Business Conduct Summary. SunDance further acknowledges and upholds Operator's commitment to compliance with all federal and state laws and regulations. SunDance certifies that they have not been excluded from participation in Medicare/Medicaid or any other federal or state funded health program.

IN WITNESS WHEREOF, Operator/Facility and SunDance have signed this Agreement effective as of the Effective Date written above.

OPERATOR/FACILITY                           SUNDANCE REHABILITATION
                                            CORPORATION

By: _Connie S. March_____                   By: _Beth Rynser_____
Name: _Connie S. March___                   Name: _Beth Rynser_____
Title: _President, Innova Hr-Soc_           Title: _____S V P_____

By signing the Agreement above on behalf of Operator/Facility and SunDance, each of the signatories represents and warrants that he or she is duly authorized to execute and enter into this Agreement on behalf of Operator/Facility or SunDance, respectively.

Copyright SunDance Healthcare Corporation
Form Date: December 18, 2001

## Exhibit A -- Compensation

## Per Diem Based Invoicing for All Facilities

### A.  Part A Standard RUG model.

1. SunDance shall be reimbursed according to the per diem schedule outlined below.  SunDance shall be entitled to the Medicare per diem rate agreed upon for each day of the Resident's stay in *each* particular RUG classification. SunDance shall be notified on admission of a patient's admitting level and of any subsequent level changes and their effective dates.

2. SunDance shall indemnify Operator pursuant to Article 4.  SunDance will reimburse Operator for the total minutes of denied services for the discipline multiplied by the per minute rate (per minute rate equals the weekly RUG reimbursement divided by category minutes).

| Level Name | SunDance Per Diem |
|---|---|
| 1.  Ultra High (RUC, RUB, RUA) | $95.66 |
| 2.  Very High (RVC, RVB, RVA) | $66.43 |
| 3.  High (RHC, RHB, RHA) | $43.18 |
| 4.  Medium (RMC, RMB, RMA) | $19.93 |
| 5.  Low (RLB, RLA) | $ 5.98 |
| Non-R Code rate: | $0.90/minute of care delivered |

## CPT Code Invoicing for Part B

Operator shall pay SunDance at a rate of 75% of the CPT-4 schedule.
SunDance shall indemnify Operator pursuant to Article 4 of this Agreement.

## Pricing for Other Payors

Operator shall pay SunDance at the rate of $0.90 per minute of care delivered.
SunDance shall indemnify Operator pursuant to Article 4 of this Agreement.

**OPERATOR:** Initials _Cu_

**SUNDANCE:** Initials _JR._

Copyright SunDance Healthcare Corporation
Form Date: December 18 2001

## Exhibit B – Facilities Covered By This Agreement

Provena Cor Mariae
3330 Maria Linder Drive
Rockford, Illinois 61114

Provena Our Lady of Victory
20 Briar Cliff Lane
Bourbonnais, Illinois 60914

Provena St. Joseph Center
659 E. Jefferson
Freeport, Illinois 61032

Provena Geneva Care Center
1101 E. State Street
Geneva, Illinois 60134

Provena Pineview Care Center
611 Allen Lane
St. Charles, Illinois 60174

Provena Villa Franciscan
210 N. Springfield Avenue
Joliet, Illinois 60435

Provena Heritage Village
901 N. Entrance
Kankakee, Illinois 60901

Provena Sacred Heart
515 N. Main
Avilla, Indiana 46710

Provena McAuley Manor
400 W. Sullivan
Aurora, Illinois 60506

Provena St. Anne Center
4405 Highcrest Road
Rockford, Illinois 61107

**OPERATOR:** Initials _Cu_

**SUNDANCE:** Initials _R_

Copyright SunDance Healthcare Corporation
Form Date: December 19, 2001

SEP-27-2007  13:47          SUNDANCE                          724 779 6491      P.14

## Exhibit A - Compensation                    (Effective August 1, 2002)

### Per Diem Based Invoicing for All Provena Facilities

**A. Part A Standard RUG model.**

1. SunDance shall be reimbursed according to the per diem schedule outlined below.  SunDance shall be entitled to the Medicare per diem rate agreed upon for each day of the Resident's stay in each particular RUG classification.  SunDance shall be notified on admission of a patient's admitting level and of any subsequent level changes and their effective dates.

2. SunDance shall indemnify Operator pursuant to Article 4.  SunDance will reimburse Operator for the total minutes of denied services for the discipline multiplied by the per minute rate (per minute rate equals the weekly RUG reimbursement divided by category minutes.)

| Level Name | | SunDance Per Diem |
|---|---|---|
| 1. | Ultra High (RUC, RUB, RUA) | $93.60 |
| 2. | Very High (RVC, RVB, RVA) | $65.00 |
| 3. | High  (RHC, RHB, RHA) | $42.25 |
| 4. | Medium (RMC, RMB, RMA) | $19.50 |
| 5. | Low (RLB, RLA) | $5.85 |

Non-R Code Rate:                              $0.90 per minute of care delivered

### CPT Code Invoicing for Part B

Operator shall pay SunDance at a rate of 75% of the CPT-4 schedule.  SunDance shall indemnify Operator pursuant to Article 4 of this Agreement.

### Pricing for Other Payors

Operator shall pay SunDance at the rate of $0.90 per minute of care delivered.  SunDance shall indemnify Operator pursuant to Article 4 of this Agreement.

OPERATOR: Initials ___*Cim*___ 8 - 13 - 02

SUNDANCE: Initials ___*Beth Rumer*___ 8 - 19 - 02

EXHIBIT 2

09/28/2007 08:18 FAX 708 478 5143          PROVENA SR SERVICES                    ☑001

Mokena Professional Center
19055 Hickory Creek Drive, Suite 310
Mokena, IL 60448
Phone: (708) 478-7900
Administration Fax: (708) 478-5143
Purchasing Fax: (708) 478-5324
Accounting Fax: (708) 478-5387

Fx : 505  468  9271



## Facsimile

**PROVENA**
Senior Services

DATE: 9-28-07 _____ Time: _____

TO:      Jim  Hummer

FROM:    Wendell Provost

RE:      Termination Letter

# PAGES:   2

MESSAGE:

_____

_____

_____

_____

_____

_____

### IMPORTANT CONFIDENTIALITY NOTICE:

This message and any attachments are confidential and may be protected by legal privilege. If you are not the intended
recipient, be aware that any disclosure, copying, distribution, or use of this message or any attachment is prohibited. If you
have received this message in error, please notify us immediately by returning it to the sender and deleting this copy from
your system. Thank you.

☐   Urgent

☐   For Review

☐   Please Comment

☐   Please Reply

Mokena Professional Center
19065 Hickory Creek Drive, Suite 310
Mokena, IL 60448
708 478-7900 Tel
708 478-5143 Administrative Fax
708 478-5387 Accounting Fax
708 478-5324 Purchasing Fax



**PROVENA**
**Senior Services**

September 26, 2007

Sundance Rehabilitation Corporation
Attn: Contractor Administrator
9244 ~ 29th Avenue
Kenosha, WI 53143-6602

RE:    **TERMINATION OF AGREEMENT**

Contract Administrator:

Pursuant to Article 6., Term and Termination of the January 1, 2002 Therapy Services Agreement between Sundance Rehabilitation Corporation and Provena Health Services, Inc., (hereinafter) Provena Senior Services, please consider this letter as prior written notice that Provena Senior Services will be terminating this Agreement, effective November 1, 2007, as it relates to the following facilities:

Provena Cor Mariae
3330 Maria Linden Drive
Rockford, Illinois 61114

Provena Our Lady of Victory
20 Briar Cliff Lane
Bourbonnais, Illinois 60914

Provena St. Joseph Center
659 E. Jefferson Street
Freeport, Illinois 61032

Provena Geneva Care Center
1101 E. State Street
Geneva, Illinois 60134

Provena Pineview Care Center
611 Allen Lane
St. Charles, Illinois 60174

Provena Heritage Village
901 N. Entrance
Kankakee, Illinois 60901

Provena Sacred Heart
515 N. Main
Avilla, Indiana 46710

Provena McAuley Manor
400 W. Sullivan Road
Aurora, Illinois 60506

Provena St. Anne Center
4405 Highcrest Road
Rockford, Illinois 61107

Sincerely,

Connie March
President and CEO
Provena Senior Services

Provena Health ministries are sponsored by the Franciscan Sisters of the Sacred Heart,
the Servants of the Holy Heart of Mary and the Sisters of Mercy of the Americas

EXHIBIT 3

Sep. 27. 2007  1:49PM    PROVENA PINE VIEW PROV DANCE              No. 1945   P. 2

## Next Steps:

1. If you would like to speak to one of the Therapists from Villa Franciscan, who were previous Sundance employees, and now work for Select Rehabilitation:

   Call 815-725-3400,  extension 1227

   Ask for one of the following therapists:
   Jennifer Ficek, Therapy Program Manager
   Lauren
   Sarah
   Tim
   Mary

2. Conference call with Select Rehabilitation:  President of Select, Anna Wolf, will be conducting a phone conference meeting for Therapy staff and Administrators at 9:00 a.m. on Friday 9/28   1-888-251-5401 passcode 9463163.  I am on PTO Friday but will come in for this meeting or call in from home.  You will be using the speaker phone in my office to participate in this phone conference.    This phone conference will last no more than 30 minutes.

3. Select Rehabilitation will start their facility visits and interviews with current therapy staff on Monday, 10/1 Select will contact the Administrator directly to coordinate & schedule this visit.

EXHIBIT 4



## SunDance

SunDance Rehabilitation Corporation 500 Montgomery
Suite 200
Alexandria, VA 22314

888.267.2220
703.684.1004
Fax 703.684.4993

www.sundancerehab.com

September 28, 2007

Dean A.J. Spizzirri
Corporate Counsel
18831 Von Karman, Suite 400
Irvine, CA 92612
dean.spizzirri@sunh.com
Direct Dial 949-255-7123
FAX 949-255-7057

<u>SENT VIA FACSIMLE (708) 478-5143 & CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>

Connie March
President and CEO
Provena Senior Services/ Provena Health, Inc.
19065 Hickory Creek Drive, Suite 310
Mokena, Illinois 60448

**Re:**    *Therapy Services Agreement between Provena Health Services, Inc. and the Provena facilities indicated*
*(collectively "Provena") and SunDance Rehabilitation Corporation ("SunDance"), dated January 1,*
*2002 (the "Agreement")*

Dear Ms. March:

I am Corporate Counsel for SunDance. This letter is in reference to the above referenced Agreement. As you
are aware, pursuant to your termination notice provided to SunDance, September 26, 2007, the last day that
services will be provided by SunDance under the Agreement is October 31, 2007. SunDance is informed that
Provena is seeking to indirectly hire the SunDance employees that have been working in the facilities through
another therapy services provider and that Provena has provided contact information for SunDance employees to
that other provider. Please be advised that such conduct constitutes a direct breach of the enclosed Agreement.
Article 9 of the Agreement provides in relevant part as follows:

> "During the term of this Agreement and for **one (1) year** following termination,
> Operator/Facility shall not, directly or indirectly. . . . employ or contract with (i) any SunDance
> employee, agent or representative who provided, managed or otherwise was involved in the
> provision of Services at the Facility within the previous one (1) year; or (ii) any business or
> enterprise or other entity in which such employees, agent or representatives owns ten percent
> (10%) or greater interest. Operator shall not induce any SunDance employee, agent or
> representative to terminate his/her relationship with SunDance...The parties acknowledge that a
> breach of the covenants contained in this Article 9 shall have irreparable, material and adverse
> effects on SunDance and damages arising from any breach may be difficult to ascertain.
> Without limiting any other available remedies, SunDance shall have the right to equitable relief,
> including but not limited to, an immediate injunction enjoining Operator's breach of this Article
> 9 and, . . .liquidated damages in an amount equal to **one hundred percent (100%)** of the
> employee's annual salary."

Provena Correspondence
September 28, 2007
Page 2 of 2

Please accept this correspondence as a formal demand that Provena and the facilities participating in the Agreement comply with the terms of the Agreement and cease and desist from soliciting SunDance employees or inducing SunDance employees to terminate their employment relationships with SunDance.

Should any SunDance therapist(s) become employed at Provena or a Provena owned facility, either directly by Provena or indirectly through another services provider after October 31, 2007, SunDance will take all legal action necessary to recover the amount equal to 100% of the annual salary of each therapist hired in violation of the terms of the Agreement. Such action would be reasonable and necessary to protect SunDance's business interests. If legal action is necessary, SunDance would be entitled to recover all attorney's fees and expenses necessary to enforce the Agreement, in addition to the liquidated damages due. (See Article 10, Section 10.7 of the Agreement.)

Thank you in advance for you courtesy and cooperation. Please direct your questions regarding this correspondence to the undersigned.

Sincerely,

Dean A.J. Spizzirri
Corporate Counsel

DAS/d
Enclosure

cc:     Jim Hummer, SunDance Vice President
        Wendell Provost, Risk Officer, Provena Senior Services

EXHIBIT 5



| | Representing Management Exclusively in Workplace Law and Related Litigation |

**jackson|lewis**

| Attorneys at Law

| | ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| | BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| | CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| | CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| | DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| | GREENVILLE, SC | ORANGE COUNTY, CA | SEATTLE, WA |
| | HARTFORD, CT | ORLANDO, FL | STAMFORD, CT |
| | HOUSTON, TX | PITTSBURGH, PA | WASHINGTON, DC REGION |
| | LONG ISLAND, NY | PORTLAND, OR | WHITE PLAINS, NY |

MY DIRECT DIAL IS: 312-274-6301

October 11, 2007

**VIA FEDERAL EXPRESS**
**PERSONAL AND CONFIDENTIAL**

Ms. Connie March
President & CEO
Provena Senior Services/Provena Health, Inc.
19065 Hickory Creek Drive
Suite 310
Mokena, IL   60448

> Re:    Provena's Violation of the Rights of
>        <u>SunDance Rehabilitation Corporation</u>

Dear Ms. March:

This firm represents SunDance Rehabilitation Corporation ("SunDance") with respect to the apparently intentional violation of SunDance's contractual and other rights by Provena Health Services, Inc. ("Provena").

By correspondence dated September 28, 2007, SunDance communicated with you directly about Provena's violation of SunDance's rights under its January 1, 2002 Therapy Services Agreement with Provena (the "Agreement"), which Agreement otherwise has been terminated by Provena effective October 31, 2007.   However, neither you nor anyone on Provena's behalf responded to that correspondence or otherwise communicated with SunDance about this issue.   Instead, it is our understanding that Provena continues to breach its contractual promises made to SunDance.

Among other promises made to SunDance by Provena in the Agreement, in Article 9 of the Agreement Provena promised as follows:

> "During the term of this Agreement and for one (1) year following termination, [Provena] shall not, directly or indirectly (*e.g.*, by hiring or using another individual or entity that hires SunDance's employees . . .), employ or contract with (i) any SunDance employee . . . who provided, managed or otherwise was involved in the provision of Services at the Facility within the previous one (1) year . . . .   [Provena] shall not induce any SunDance employee . . . to terminate his/her relationship with SunDance. . . ."



**jackson|lewis**
　　　　　| Attorneys at Law

Additionally, Provena agreed that the following remedies were reasonable and appropriate in the event of a breach by Provena:

> "Without limiting any other available remedies, SunDance shall have the right to equitable relief, including, but not limited to, an immediate injunction to enjoin [Provena's] breach of this Article 9 and, if permitted by applicable law, the right to liquidated damages in an amount equal to one hundred percent (100%) of the employee's annual salary."

Moreover, Article 10.7 of the Agreement may be invoked to provide reimbursement by Provena to SunDance for attorneys' fees incurred by SunDance to protect its rights.

In addition to your contractual obligations under the Agreement, the Illinois Trade Secrets Act and Illinois common law may further protect SunDance's rights. As you must be aware, Illinois law protects SunDance's relationships with its employees from wrongful, intentional interference.

If our understanding of Provena's conduct is correct, at a minimum Provena has breached its contractual obligations under Article 9 of the Agreement and has intentionally interfered with SunDance's relationships with its employees. Specifically we understand that Provena has been encouraging and inducing SunDance employees to leave SunDance's employ and seek employment with a competitor of SunDance, Select Rehabilitation. As we understand it, effective November 1, 2007, Select Rehabilitation will be providing the services to Provena that have thus far been provided by SunDance under the Agreement. Thus, Provena's solicitation of SunDance employees on behalf of Select Rehabilitation, as well as its apparent intention to use Select Rehabilitation to employ those employees in the same positions for which they have been employed by SunDance, directly violates your obligations under Article 9 of the Agreement and also intentionally interferes with SunDance's employment relationships with its employees. SunDance takes this matter extremely seriously.

We have no desire unnecessarily to commence litigation to protect SunDance's rights if, in fact, Provena's conduct represents a momentary exercise of poor judgment and not a deliberate attempt to circumvent its obligations to SunDance. To allay our fear that Provena's conduct has been deliberate and not just an isolated and momentary lapse in judgment, please provide the following information: (1) whether Provena intends to comply fully with its obligations as set forth in Article 9 of the Agreement; (2) whether Provena has been encouraging SunDance's employees to seek employment with Select Rehabilitation; (3) whether Provena in the future will encourage SunDance's employees to seek employment with Select Rehabilitation; and (4) whether Provena intends to allow Select Rehabilitation to service Provena by using employees who have/had provided services to Provena under the Agreement. **We expect your written response no later than the close of business on Thursday, October 18, 2007.**

Should you ignore or refuse this request, we will understand your failure to provide the requested information as evidence that you do not intend to honor your obligations under the Agreement and that you intend to continue to interfere with SunDance's employment relationships with its employees. Accordingly, we will institute the appropriate legal proceedings against you to enforce SunDance's rights. **Accordingly we encourage you to seek legal counsel and have such counsel contact the undersigned immediately.**



**jackson | lewis**
Attorneys at Law

Very truly yours,
JACKSON LEWIS LLP

Peter R. Bulmer

/pb

cc:    Dean A.J. Spizzirri, Esq., Corporate Counsel

EXHIBIT 6

Representing Management Exclusively in Workplace Law and Related Litigation

**jackson lewis**
Attorneys at Law

| | | |
|---|---|---|
| ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| GREENVILLE, SC | ORANGE COUNTY, CA | SEATTLE, WA |
| HARTFORD, CT | ORLANDO, FL | STAMFORD, CT |
| HOUSTON, TX | PITTSBURGH, PA | WASHINGTON, DC REGION |
| LONG ISLAND, NY | PORTLAND, OR | WHITE PLAINS, NY |

MY DIRECT DIAL IS: 312-274-6301

October 19, 2007

**VIA FAX (708-478-5960) & U.S. MAIL**
**PRIVILEGED AND CONFIDENTIAL**

Jeffrey R. Mathis
System Manager & Associate General Counsel
Provena Health, Inc.
19065 Hickory Creek Drive
Suite 300
Mokena, IL   60448

Re:    Provena's Violation of the Rights of
       <u>SunDance Rehabilitation Corporation</u>

Dear Mr. Mathis:

This confirms our teleconference of this afternoon, at the end of which we agreed that I would call you on Tuesday, October 23, 2007, at 2:00 p.m. Chicago time (I will be in San Francisco). During our teleconference, I confirmed my client's intent to take whatever legal steps necessary to enforce its rights prior to November 1, 2007. We agreed to continue to discuss whether there was a means of resolving this short of litigation. In that regard, it is my understanding that when we speak on October 23, you will have a specific proposal for resolving this dispute.

As you know, the parties' January 1, 2002 Therapy Services Agreement has been terminated by Provena effective October 31, 2007. Accordingly, if we are unable to resolve this dispute within a few days of October 23, we will need to turn our attention to preparing the pleadings necessary to seek judicial relief prior to November 1, 2007.

Very truly yours,
JACKSON LEWIS LLP

Peter R. Bulmer

/pb

cc:    Dean A.J. Spizzirri, Esq., Corporate Counsel

EXHIBIT 7

Representing Management Exclusively in Workplace Law and Related Litigation

**jackson|lewis**

Attorneys at Law

| | | |
|---|---|---|
| ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| GREENVILLE, SC | ORANGE COUNTY, CA | SEATTLE, WA |
| HARTFORD, CT | ORLANDO, FL | STAMFORD, CT |
| HOUSTON, TX | PITTSBURGH, PA | WASHINGTON, DC REGION |
| LONG ISLAND, NY | PORTLAND, OR | WHITE PLAINS, NY |

MY DIRECT DIAL IS: 312-274-6301

October 25, 2007



**VIA FAX (708-478-5960)**
**PRIVILEGED AND CONFIDENTIAL**

Jeffrey R. Mathis
System Manager & Associate General Counsel
Provena Health, Inc.
19065 Hickory Creek Drive
Suite 300
Mokena, IL   60448

       Re:  Provena's Violation of the Rights of
          SunDance Rehabilitation Corporation

Dear Mr. Mathis:

   This confirms our teleconference of Tuesday, October 23, 2007, while I was in San Francisco (I am now back in my office).  On Tuesday, you told me that you had been unable to speak with Provena's chief executive officer and its risk manager, and that you needed their input prior to making a specific proposal for resolving this dispute.  You asked if my client would wait until the close of business today, October 25, to receive Provena's proposal.  I advised that, as a courtesy and based on the assumption that Provena is acting in good faith, we would take no action before receiving your proposal today.

   Accordingly, I look forward to receiving Provena's proposal before 5:00 p.m. today.

         Very truly yours,
         JACKSON LEWIS LLP

         Peter R. Bulmer

/pb

EXHIBIT 8

11/02/2007  12:09    4104807169                    JIM HUMMER                           PAGE  01/05



## SunDance

SunDance Rehabilitation Corporation  5850 Waterloo Road
Suite 140
Columbia, MD 21045

800.948.9371
Fax 410.480.7169

Jeffery R. Mathis
System Manager & Associate General Counsel
Provena Health, Inc
19065 Hickory Creek Drive
Suite 300
Mokena, IL 60448

Re: SunDance Invoice

Dear Mr. Mathis:

In regard to the Therapy Services Agreement that terminated effective November 1, 2007, enclosed are the following two documents: (1) a list of SunDance employees who provided Services under the Agreement at any time during the period from November 1, 2006 to October 31, 2007; and (2) an invoice that reflects the names and annual salaries of each employee whom we believe Provena is using to provide the same services that were provided when they were employees of SunDance. Under Article 9 of the Agreement, Provena's use of those employees reflects that Provena has opted to pay SunDance the liquidated damages amount set forth in Article 9. The invoice reflects those liquidated damages for each such former employee of SunDance. This letter and the enclosed invoice constitute SunDance's formal demand that Provena honor its obligations under Article 9. If we have included employees who, in fact, are not being used by Provena through a third-party provider or otherwise, please identify those employees and we will re-issue the invoice. Otherwise, we expect full payment no later than November 15th, 2007. Should Provena fail to pay the invoice in full by that date, we will understand such failure to mean that Provena does not intend to honor its promises contained in Article 9 and we shall institute the appropriate judicial proceedings to enforce our contractual rights. In addition, if we learn of any other former SunDance employees being used by Provena in violation of Article 9, we will issue the appropriate invoice for the liquidated damages amount for each such employee.

Sincerely,

Jim Hummer
Senior VP
SunDance Rehabilitation

cc:    Connie March, President Provena Senior Services
       Dean A.J. Spizzirri, Corporate Counsel

11/02/2007  12:09   4104807169              JIM HUMMER                    PAGE  02/05

Invoice
Page 1 of 2

**PLEASE REMIT A COPY OF THE FIRST PAGE OF THIS INVOICE WITH
YOUR PAYMENT OR WRITE THE INVOICE NUMBER (LOCATED AT THE
RIGHT TOP CORNER OF YOUR INVOICE) ON YOUR CHECK.  THANK YOU**

 **SUNDANCE REHABILITATION
THERAPY SERVICES INVOICE**                         October 31, 2007

**INVOICE**

Facility:   Connie S. March, President     Remit : SUNDANCE REHABILITATION CORPORATION
     Provena Senior Services                  Attn:  Helen Jones
     19065 Hickory Creek Drive, Suite 310     200 Northpointe Circle, Suite 302
     Mackena, Illinois 60448-8507                Seven Fields, PA  16046

| Facility/Employee Name | Discipline | Fee based upon Annual Salary |
|---|---|---|
| **Cor Mariae** | | |
| Andrzej Zasadny | PT | $74,984.00 |
| Rose Zwanzig | PTA | $43,680.00 |
| Phyllis McCune | AIDE | $23,566.40 |
| Sandra Ostendorf | PT | $33,280.00 |
| Peggy Clevenger | COTA | $59,987.20 |
| Michele Williams | OT | $72,800.00 |
| Erin Schram | SLP | $62,400.00 |
| **Heritage Village** | | |
| Lisa Johnson | PT | $77,126.40 |
| Katherine Hines | PTA | $48,547.20 |
| Crystal Melhorn | AIDE | $22,880.00 |
| Edna McCarthy | OT | $77,043.20 |
| Barbara Dhom | COTA | $58,240.00 |
| Johanna Pacocha | SLP | $74,984.00 |
| **Our Lady of Victory** | | |
| Arlene Rojo | PT | $77,771.20 |
| Tamara Vent | AIDE | $22,880.00 |
| Emily Dau | OT | $74,880.00 |
| Tiffany Kulikowski | COTA | $56,160.00 |
| Mellisa Mulvihill | SLP | $79,040.00 |
| Jennifer Frank | SLP | $62,400.00 |
| **St. Anne Center** | | |
| Deanna Williams | PTA | $54,080.00 |
| Jacob Mears | PTA | $54,080.00 |
| Jenilee Spencer | PTA | $49,920.00 |

Invoice
Page 2 of 2

| Facility/Employee Name | Discipline | Fee based upon Annual Salary |
|---|---|---|
| Regina Coble | AIDE | $27,040.00 |
| Emily Druien | AIDE | $23,920.00 |
| Brian Thor | AIDE | $22,880.00 |
| Penny Alsup | OT | $71,760.00 |
| Rachel McKinley | OT | $68,993.60 |
| Margaret Miller | OT | $74,630.40 |
| Donna Leger | COTA | $52,707.20 |
| Marianne Kunkel | COTA | $53,560.00 |
| Tami Haslanger | COTA | $58,240.00 |
| Carol Huffman | PT | $72,800.00 |
| PRADEEPA FRANKLIN | PT | $81,411.20 |
| Sharon Fritts | COTA | $52,000.00 |
| **Sacred Heart** | | |
| Marek Forgalski | PT | $78,728.00 |
| Chrisann McKinley | PTA | $44,553.60 |
| Christopher English | PTA | $57,844.80 |
| Linda Diehl | COTA | $42,161.60 |
| Marie Sanders | COTA | $41,600.00 |
| Tiffany Larson | SLP | $72,800.00 |
| **Geneva Care Center** | | |
| Rafael Anyfiotis | PTA | $58,240.00 |
| Sherrylyn Rocamora | PT | $70,720.00 |
| Elizabeth Steinhauser | OT | $81,120.00 |
| Kim Franzen | COTA | $52,000.00 |
| **McAuley Manor** | | |
| Betty Burke | SLP | $72,800.00 |
| **Pineview Care Center** | | |
| Lisa Ceinski | OT | $79,040.00 |
| Jodi Boe | SLP | $71,593.60 |
| **St. Joseph Center** | | |
| Julie Clemen | PTA | $53,019.20 |
| Marcia Dubach | OT | $72,176.00 |
| **TOTAL INVOICE** | | **$2,869,068.80** |



October 31ˢᵗ, 2007

## SunDance

SunDance Rehabilitation Corporation
200 Northpointe Circle
Suite 302
Seven Fields, PA  16046
Phone:  724-779-6440

The following individuals have worked for SunDance Rehabilitation Corporation at a Provena center within the last twelve month:

| | | |
|---|---|---|
| Alam, Melba | Dhorn, Barbara | Johnson, LaToya |
| Allen, Ruth | Diehl, Linda | Johnson, Lisa |
| Allman, Carrie | Druien, Emily | Keegan, Julie |
| Alsup, Penny | Dubach, Marcia | Kimak, Brenda |
| Angelo, Tenee | Duty, Donna | Kohrman, Thomas |
| Anyfiotis, Rafeael | English, Christopher | Kopytov, Oleg |
| Arnold Riley, Annie | Ervin, Sara | Kosciuch, Igor |
| Badayos, Adelio | Fletcher, Gemma | Kovach, Sarah |
| Beck, Julianna | Floresca, Maria | Kruczalak, Greg |
| Becke, Brookly | Forgalski, Marek | Kulikowski, Tiffany |
| Beler, Beverly | Frank, Jennifer | Kumar, Vinod |
| Bianco, Nicholas | Franklin, Pradeepa | Kunkel, Marianne |
| Boe, Jodi | Franzen, Annette | Land, Patricia |
| Boots, Kristina | Franzen, Kimberly | Larson, Tiffany |
| Bruce, Monica | Friedman, Nancy | Lebowitz, Marci |
| Burke, Betty | Fritts, Sharon | Leger, Donna |
| Burr, Julia | Giles, Sherie | Lindemulder, Michelle |
| Celnski, Lisa | Graf, Carrie | Martinez, Johanna |
| Chambers, Lisa | Hackworth, Lisa | McCarthy, Edna |
| Chow, Julianna | Haslanger, Tami | McCune, Phyllis |
| Cikanek, William | Hau, Mylinh | McEwen, Tijuanna |
| Clemen, Julie | Hedges, Renee | McKinley, Chrisann |
| Clevenger, Peggy | Hile, Rachel | McKinley, Rachel |
| Coble, Regina | Hines, Katherine | Mears, Jacob |
| Conroy, Annette | Horn, Laurel | Melhorn, Crystal |
| Dagenais, Christine | Huffman, Carol | Memorando, MaJanet |
| Dau, Emily | Hughes, Monica | Miller, Deborah |
| Desper, Julie | Jensen, Holly | Miller, Gloria |

Employee List (cont'd)
Page 2 of 2

| | |
|---|---|
| Miller, Margaret | Spencer, Jennilee |
| Mitchell, Michelle | Srinivas, Sonia |
| Monk, David | Steinhauser, Elizabeth |
| Moon, Amy | Tagarao, Sarah |
| Mosier, Laura | Thor, Brian |
| Mraz, Kimberly | Trotter, Patricia |
| Mulvihill, Melissa | Vent, Tamara |
| Nicolls, Maureen | Vent, Thomas |
| Niemczyk, Janusz | Walters, Jennifer |
| Niemczyk, Katarzyna | Williams, Deanna |
| Ostendorf, Sandra | Williams, Michele |
| Pacocha, Joanna | Wollenweber, Ginger |
| Palav, Ashwini | Yarandi, Mitra |
| Parrish, Michele | Yeoman, Gretchen |
| Patel, Nita | Zasadny, Andrzej |
| Pawlyshyn, Yolanda | Zasadny, Malgorzata |
| Riecke, Amanda | Zwanzig, Rose |
| Rocamora, Sherrylyn | |
| Rojo, Arlene | |
| Ruch, Judith | |
| Ruzas, Stacy | |
| Sanders, Marie | |
| Sankaranarayanan, R | |
| Schram, Erin | |
| Shumaker, Jack | |
| Slinde, Karen | |
| Smith, Kimberly | |
| Snyder, Louise | |

EXHIBIT 9

Nov. 14. 2007  3:56PM                                             No. 3631   P. 2

## CHUHAK & TECSON, P.C.

### Attorneys at Law

David J. Tecson

Writer's Direct Line
(312) 855-4059

Writer's E-mail
dtecson@chuhak.com

30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606-7413

312.444.9300
Fax 312.444.9027
www.chuhak.com



November 14, 2007

## VIA FACSIMILE AND U.S. MAIL

Peter R. Bulmer, Esq.
jackson/lewis
320 W. Ohio Street, Suite 500
Chicago, Illinois 60610

     Re:    *SunDance Rehabilitation Corporation v. Provena Senior Services*

Dear Mr. Bulmer:

     Provena Senior Services ("Provena") retained my firm to defend the litigation threatened by SunDance Rehabilitation Corporation ("SunDance"). We have reviewed the demand letters sent by SunDance and the more recent billing statement sent by SunDance to Provena. In light of the circumstances, we request that SunDance refrain from additional threats and demands leveled at our client. Provena rejects the "invoice" sent on November 2 which appears to be based on unverified factual allegations related to an unenforceable restraint on trade. (<u>Szabo Food Service, Inc. v. Cook County</u>, 160 Ill.App.3d 845, 513 N.E.2d 875 (1st Dist 1987).

     Provena does not employ any of the therapists listed in the SunDance demand of November 2, 2007. Conjecture by SunDance that SunDance is owed a large sum of money arising out of unenforceable penalty provisions does not constitute the basis for an "invoice" for services rendered pursuant to Illinois law.

                       Sincerely,

                       David J. Tecson

DJT/mmm

cc:     Provena Senior Services
        Jim Hummer

728428\1\14601\34330